# UNITED STATES DISTRICT COURT

for the
Southern District of Illinois

SCANNED at MENARD and E-mailed
1-10-23 by SS    33 pages
Date    initials    No.

Dominique Bentley # M16347 )
_____ )
_____ )
_____ )

Case Number: 23-48-SMY _____

(Clerk's Office will provide)

Plaintiff(s)/Petitioner(s) )

v. )

Carri Morris, S. Buettner, Draper, )
Mabrey, Major Rowland, Brooks, )
Choate, Bent, Hoffman, Royster, and )
Atkins, John Doe(s) )

Defendant(s)/Respondent(s) )

☒ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. §1983 (State Prisoner)
☐ CIVIL RIGHTS COMPLAINT
pursuant to 28 U.S.C. §1331 (Federal Prisoner)
☐ CIVIL COMPLAINT
pursuant to the Federal Tort Claims Act, 28 U.S.C.
§§1346, 2671-2680, or other law

## I.    JURISDICTION

**Plaintiff:**

A.    Plaintiff's mailing address, register number, and present place of confinement. Dominique Bentley
Reg. No. M16347
711 Kaskaskia Street
P.O. Box 1000
Menard, Illinois 62259
Menard Correctional Center

**Defendant #1:**

B.    Defendant _Carri Morris_ is employed as
            (a)    (Name of First Defendant)

_Mental Health Supervisor, LCSW, SWIV, Social Worker IV_
            (b)    (Position/Title)

with _Menard Correctional Center / Wexford Health Serv., Inc._
            (c)    (Employer's Name and Address)

_711 Kaskaskia Street, P.O. Box 1000, Menard Illinois 62259_

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government?    ☒ Yes    ☐ No

If your answer is YES, briefly explain: Carri Morris was Mental Health
Supervisor, LCSW, Social Worker IV. To Supervise my Mental Health Care
as well as the Mental Health Professionals who also conducted
interviews with me while I was on Crisis Watch.

Rev. 10/3/19

1

**Defendant #2:**

C.    Defendant  _S. Buettner_                                                     is employed as
                          (Name of Second Defendant)

_Mental Health Professional_
                          (Position/Title)

with _Menard Correctional Center / Wexford Health Serv., Inc._
                          (Employer's Name and Address)

_711 Kaskaskia Street, P.O. Box 1000, Menard, Illinois 62259_

At the time the claim(s) alleged in this complaint arose, was Defendant #2
employed by the state, local, or federal government?     ☒ Yes     ☐ No

If you answer is YES, briefly explain: MS. Buettner was a Mental
Health Proffesional who conducted interviews with me while
I was on crisis watch as well as one on one sessions.

**Additional Defendant(s) (if any):**

D.    Using the outline set forth above, identify any additional Defendant(s).

Defendant #3:

Defendant: ms. Draper

Position/Title: Mental Health Professional
Employer's Name and Address: Menard Correctional Center / Wexford Health Serv.I
711 Kaskaskia Street, P.O. Box 1000, Menard Illinois 62259

Defendant #3 employed by the State government, Yes.
Explain: MS. Draper was a mental Health Professional who conducted
interviews with me while I was on crisis watch as well as one on
one Sessions.

Rev. 10/3/19

2

Defendant # 4:

E. Defendant: Mabrey

Position/Title: Mental Health Professional

Employer's Name and Address: Menard Correctional Center/Wexford Health Serv. Inc.
711 Kaskaskia Street, P.O. Box 1000, Menard Illinois 62259

Defendant # 4 employed by the state government, Yes.

Explain: Ms. Mabrey was a mental Health Professional who Conducted interviews with me while I was on crisis watch as well as one on one sessions.


Defendant #5:

F. Defendant: Major Rowland

Position/Title: Major of North 2 cell house unit

Employer's Name and Address: Menard Correctional Center
711 Kaskaskia Street, P.O. Box 1000, Menard Illinois 62259

Defendant #5 employed by the state government, Yes.

Explain: Major Rowland was the major assigned for 5 days in North 2 unit cellhouse, where I was on crisis watch, as well as assigned to answer my grievances verbally; Concerning my self harming incidents. As well as Supervisor over all Security staff in North 2 including Crisis watch Prison Guards.

3

Defendant #6:

G. Defendant: Brooks

Position/Title: Prison Guard

Employer's Name and Address: Menard Correctional Center
711 Kaskaskia street, P.O. Box 1000, Menard Illinois 62259

Defendant #6 employed by the state government, Yes.
Explain: Prison Guard Brooks was a prison Guard assigned to either Crisis watch or 5 gallery where I was housed on crisis watch and Shook cell down when items was left behind So mr. Bentley could Self-mutilate with.

Defendant #7:

H. Defendant: Royster

Position/Title: Sergeant of North 2 cellhouse Unit

Employer's Name and Address: Menard Correctional Center
711 Kaskaskia street, P.O. Box 1000, Menard Illinois 62259

Defendant #7 employed by the state government, Yes.
Explain: Sgt. ~~████~~ Royster was the sergeant assigned to North 2 cellhouse unit, where I was on Crisis watch.

Defendant #8:

I. Defendant: ~~████~~ Akins

Position/Title: Prison Guard and Acting Sergeant

Employer's Name and Address: Menard Correctional Center
711 Kaskaskia street, P.O. Box 1000, Menard Illinois 62259

Defendant #8 employed by the state government, Yes.
Explain: Akins, is normally a Prison Guard in North 2 cellhouse unit, but will also stand in as acting Sergeant when needed as he was while I was on Crisis watch. and was also Prison Guard who conducted cell Shake down when items were left behind So mr. Bentley Could Self-Mutilate with.

4

Defendant # 9
  J. Defendant: <u>Bent</u>
    Position/Title: <u>Prison Guard</u>
  Employer's Name and Address: <u>Menard Correctional Center</u>
          <u>711 Kaskaskia Street, P.O. Box 1000, Menard Illinois 62259</u>
  Defendant #9 employed by the State government, <u>yes.</u>
    Explain: Bent was a prison Guard in North 2 cell house unit assigned
  to 2 gallery when I asked to Speak with a mental health Professional when
  I was going through a severe depressive episode, which he denied me access
  to mental Health staff member.

Defendant #10
  K. Defendant: <u>Choate</u>
    Position/Title: <u>Prison Guard</u>
  Employer's Name and Address: <u>Menard Correctional Center</u>
          <u>711 Kaskaskia Street, P.O. Box 1000, Menard Illinois 62259</u>
  Defendant #10 employed by the State government, <u>yes.</u>
    Explain: Choate was a prison Guard assigned to either crisis watch
  or 5 gallery where I was housed on crisis watch and shook cell down
  when items was left behind so mr. Bentley could Self-Mutilate with.

Defendant #11
  L. Defendant: <u>Hoffman</u>
    Position/Title: <u>Prison Guard</u>
  Employer's Name and Address: <u>Menard Correctional Center</u>
          <u>711 Kaskaskia Street, P.O. Box 1000, Menard Illinois 62259</u>
  Defendant #11 employed by the State government, <u>yes.</u>
    Explain: Hoffman was a prison Guard assigned to either crisis watch
  or 5 gallery where I was housed on crisis watch and shook cell
  down when items was left behind so mr. Bentley could Self-Mutilate with.

5

Defendant # 12

  M. Defendant : <u>John Doe</u>

  Position/Title : <u>Prison Guard</u>

Employer's Name and Address : <u>Menard Correctional Center</u>

  <u>711 Kaskaskia Street, P.O. Box 1000, Menard Illinois 62259</u>

Defendant #12 employed by the State government, <u>yes.</u>
Explain : John Doe, was a prison Guard that Shook down my Crisis watch cell on June 11, 2022 and left paper clip in cell so that I could Self-Mutilate with. I don't know his name but it will be on the Shake down Slip for the Prison Guard that conducted the Shake down to my Crisis watch cell on June 11, 2022.

Defendant #13

  N. Defendant : <u>John Doe</u>

  Position/Title : <u>Prison Guard</u>

Employer's Name and Address : <u>Menard Correctional Center</u>

  <u>711 Kaskaskia Street, P.O. Box 1000, Menard Illinois 62259</u>

Defendant #13 employed by the state government, <u>yes.</u>
Explain : John Doe, was a prison Guard who was assigned to Shower detail on January 14, 2022 for 2 gallery Showers. I told him also once he let me out for the Showers that I needed to see or Speak with a Mental Health because I was feeling Suicidal, He refused to allow me one Saying do I want a Shower or not, that he didn't have time for that he had Showers to run and finish.

6

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ☐Yes ☒No

B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability**, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)). FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.   Parties to previous lawsuits:
     Plaintiff(s):


     Defendant(s):


2.   Court (if federal court, name of the district; if state court, name of the county):

3.   Docket number:

4.   Name of Judge to whom case was assigned:

5.   Type of case (for example: Was it a habeas corpus or civil rights action?):

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?):

Rev. 10/3/19

7.      Approximate date of filing lawsuit:

8.      Approximate date of disposition:

9.      Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?"

## III.    GRIEVANCE PROCEDURE

A.      Is there a prisoner grievance procedure in the institution? ☒ Yes    ☐ No

B.      Did you present the facts relating to your complaint in the prisoner grievance procedure?        ☒ Yes    ☐ No

C.      If your answer is YES,
  1.   What steps did you take? *Due to me being on crisis watch and not being allowed to have pen, paper, etc. Different Individuals In Custody who would overhear what was going on in population. would write grievances for me and have the watch Guard to place on my door on the next Shift and I would have it placed in the grievance box either later that day or the next day.*
  2.   What was the result? *They would often come back answered as denied or moot, although they were not resolving any of my issues. Alot of the grievances would not come back period. They were getting thrown away.*

D.      If your answer is NO, explain why not.

E.      If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?        ☐ Yes    ☐ No

F.      If your answer is YES,
  1.   What steps did you take?

Rev. 10/3/19

2.    What was the result?

G.    If your answer is NO, explain why not.

H.    Attach copies of your request for an administrative remedy and any response you received. If you cannot do so, explain why not:

I almost always asked to be placed in a institution that had staff that could give me the mental health treatment I needed and would provide a safer environment so that I could learn not to self-mutilate anymore. And to punish staff members that was involved with mistreating me when I was going through my mental illness, with suspensions or removed from dealing with us who suffers from mental illnesses.

Rev. 10/3/19

9

## IV.    STATEMENT OF CLAIM

A.    State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated.  Do not include legal arguments or citations.  If you wish to present legal arguments or citations, file a separate memorandum of law.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

### COUNT I.

PLAINTIFF IN THIS MATTER; DOMINIQUE BENTLEY, # M16347
ON JANUARY 14, 2022, INFORMED STAFF MEMBERS THAT HE NEEDED TO SPEAK WITH A MENTAL HEALTH PROFESSIONAL BECAUSE HE WAS SUFFERING FROM A EXTREME BOUT OF DEPRESSION AND WANTING TO SELF-HARM, WHICH WAS EXACERBATED BY HIS PLACEMENT IN LONG TERM SEGREGATION, HE WAS DENIED ACCESS TO MENTAL HEALTH TREATMENT, AND IN DOING SO ALLOWING PLAINTIFF TO BE PLACED IN A POSITION WHERE HE COULD SELF-MUTILATE.

On January 14, 2022 Plaintiff Dominique Bentley Reg. No. M16347, asked Prison Guard Bent, could he speak with a Mental Health Professional? Prison Guard Bent asked why? Mr. Bentley informed him that he was feeling suicidal and needed to speak with a M.H.P. Prison Guard Bent stated "if you was really suicidal you wouldn't ask to speak to anyone, and that people who really want to commit suicide just do it and don't tell anyone what they are about to do. So what you really want is some attention, and I don't have time for that right now. Approximately thirty minutes later he was pulled out to go to the shower by the shower Prison Guard, and he told him he needed to speak to a MHP cause he was feeling suicidal. The Shower officer said "Do you want a shower or not, I have too many showers to do, So if you want a shower let's go, if not I'm locking you back up." Plaintiff continued to walk to the shower. Once he

Rev. 10/3/19

10

got in the shower cage, the Prison Guard said "I understand you might be going through something. But I don't have time for that today, I have alot of showers to run and finish. You should let your gallery officer know that you need to speak with a MHP." Mr. Bentley informed him that he did speak with his gallery officer Bent, and Bent, told him that he didn't take him serious. The shower officer then said "Then it's nothing I can do about it, you should write Mental Health Department a letter and they'll have someone to call you out." He then asked mr. Bentley did he want a razor? mr. Bentley said yes. Because of mr. Bentley's serious mental illness, he suffers severe bouts of depression, since being in segregation, which causes him to self harm. Mr. Bentley tried to commit suicide by cutting his arm in the shower and bleeding out. The Prison Guard conducting showers, approached the shower which held mr. Bentley and told him to wrap it up and get out, that his time was up. The Prison Guard, after seeing mr. Bentley leaning against the wall and seeing the blood, asked mr. Bentley "was he alright?" When mr. Bentley failed to respond to the shower officer. He told mr. Bentley to cuff up and then took him to the Health Care infirmary and he was seen by a MHP and placed on suicide crisis watch.

## <u>COUNT II.</u>

MENTAL HEALTH SUPERVISOR, AFTER SEEING PLAINTIFF's
SUICIDAL/SELF-MUTILATION TENDENCIES, RESPONDED
BY PLACING PLAINTIFF ON FORCED PSYCHOTROPIC
MEDICATION WITHOUT APPROPRIATE SUPERVISION AND
PERIODIC EVALUATION. AND FAILED TO PROTECT PLAINTIFF FROM SELF-HARM.

*11*

After Mr. Bentley's Self-Mutilation, Carri Morris, who was Mental Health Supervisor; responded by placing Mr. Bentley on forced Psychotropic Medication. When mental health Professionals would hold the one on one sessions with Mr. Bentley, they would try to force him to come off of watch, even Cutting his Continuous watch, 10 minutes to a 30 minute watch so they could force him off watch. Mr. Bentley Knew he needed help from harming himself and continued to tell them he needed help. Carri Morris told Plaintiff that he was on forced medication and that would prevent him from Self-harming. But that was not true because Plaintiff Continued to Self-mutilate even while on watch where he remained for Several months because he wouldn't Stop Self-mutilating. They would Just throw him back in a Cell, while it was obvious Something was Seriously wrong if A) Plaintiff Continued throughout his placement on Crisis watch to get his hands on or in his possession items to self harm with. And B) That whoever was assigned to watch Plaintiff was egregiously negligent in their duty to watch Plaintiff to Protect him from himself. Mental Health Supervisor Carri Morris, failed to Set up a basic program for the identification, treatment and Supervision of Plaintiff's Suicidal / Self-Mutilating tendencies. Which is a necessary Component of any Mental Health treatment Program, especially Since Plaintiff continued to Self-Mutilated while on the forced Psychotropic Medication. And She failed to take actions against Security staff in the form of writing incident reports Concerning why was the watch officers negligent in allowing Plaintiff to Self-Mutilated and have the Contraband to do it with.

12

## COUNT III.

PRISON GUARDS BEGIN TO WRITE DISCIPLINARY REPORTS BECAUSE PLAINTIFF WAS SELF-MUTILATING WHICH WAS THE RESULTS OF MENTAL HEALTH STAFF FAILURE TO TREAT PLAINTIFF'S COMPULSION TO SELF-MUTILATE, AND EXCESSIVE USE OF FORCE AGAINST A MENTALLY ILL PRISONER.

Plaintiff begin self-mutilating while on watch, but due to being on crisis watch wasn't able to document all the days. It was because of the guys on 7 gallery, who is in population got tired of smelling the O.C. spray every time Mr. Bentley cut up, they (Prison Guards) would spray him for cutting up. But on March 30, 2022 Plaintiff was yelling to a Individual In Custody, who was in general population what he wanted on the grievance. The population inmate was frustrated due to Prison Guards spraying the O.C. spray, and offered to write the grievance for Mr. Bentley. This is when Prison Guard Hoffman saw Plaintiff cutting his arm with a large paper clip sharpened at the tip. Hoffman first said to Plaintiff "I don't care if you die." And Plaintiff begin to yell "I don't care if I die either." The population inmates knowing how this situation who turn out, begin talking to Mr. Bentley about not cutting but it was too late. Prison Guard Hoffman Radioed for Sgt. Royster who came and out of being frustrated, and not understanding that Mr. Bentley suffers from a real mental illness, sprayed Mr. Bentley with O.C. Spray. When population inmates begin to complain about why Sgt. Royster had to spray him again. Sgt. Royster said because he's tired of his (Mr. Bentley's) games, and Since he

13

Wanted to act up he's gonna get some act right juice, referring to the O. C. spray. Inmates begin to tell mr. Bentley they would write a grievance for him because the way Prison Guards was handling mr. Bentley was just wrong. This cause Prison Guard Hoffman to write the first ticket out of several that mr. Bentley would receive. Prison Guard Hoffman encouraged Plaintiff to cut and then fabricated that he cut his self with his fingernail. Plaintiff periodically self-mutilated since that ticket, but on may 2, 2022 he received another ticket from Prison Guard House stating he had found 3 pieces of what appeared to be wire, and 1 piece of what appeared to be part of fingernail clippers, in his crisis smock. But the truth is mr. Bentley had swallowed some of the copper wire and cut up with the nail clippers. Prison Guard House failed to mention that Plaintiff had self-harmed, and made the ticket out to seem as if he had only found contraband. Again, mr. Bentley cut up so much that he lost tracks of the dates and couldn't document all of the self-harm he done in between the next ticket he received. Which was on June 11, 2022, Prison Guard Garcia while doing count crisis watch rounds noticed blood coming from under Plaintiff's cell door, and radioed for acting Sgt. Akins. When acting Sgt. Akins arrived Plaintiff had already self-mutilated and was in a sitting position on the floor with his back to the wall. No longer cutting, at this time he was bleeding out and when acting Sgt. Akins came, he sprayed Plaintiff with an excessive amount of O.C. spray, then ordered Plaintiff to cuff up. Plaintiff complied and was taken to Health care and placed back in the cell afterwards. Plaintiff later received another ticket. Acting Sgt Akins fabricated that he gave Plaintiff multiple orders before he administered the O.C. spray. But what really happened was acting Sgt. Akins asked Plaintiff what did you cut with. Plaintiff showed him the paperclip he cut with and told him that he swallowed the other one that was

found in his cell. That's when acting Sgt. Akins sprayed him with the O.C. spray acting Sgt. Akins after spraying Plaintiff with the O.C. spray causing plaintiff to drop the paperclip, then cuffed up and was taken to the infirmary and placed back in the cell. The paperclip was still in the cell where Plaintiff dropped it. Plaintiff cut his arm on June 12, 2022 with that same paperclip. Again Plaintiff continued to self-mutilate periodically and had no way to document the exact days. But on July 14, 2022, Plaintiff found a book of matches in his cell, although this is a non-smoking institution. Plaintiff tried to kill himself on July 15, 2022 by setting his mattress on fire. Prison Guard Akins, was escorting MHP Mabrey, to Plaintiff's cell. He became visibly agitated and radioed for Prison Guard Choate. Prison Guard Akins, then ran to get the fire extinguisher. Although Plaintiff, was not on fire; Akins, sprayed mr. Bentley with the fire extinguisher, then spray the mattress, and then spray mr. Bentley again with the fire extinguisher after the fire on the mattress was put out. The fire extinguisher contents burned mr. Bentley skin more than the O.C. spray does. He was then cuffed and taken to the Health care. Mr. Bentley received another ticket for trying to self-harm, which is a violation of Rashoo V. Baldwin. While security staff and mental Health staff failed to investigate how does someone in a crisis watch cell finds a box of matches to start a fire with. Prison Guards failed to take reasonable steps to prevent Plaintiff from getting items to self-mutilate and then would write him infractions periodically for self-mutilating. (See Exhibits A, B, C1-C2, and D1-D2.) Prison staff failed to protect mr. Bentley on so many occasions from self-injury and often used unnecessary excessive force when responding to this mentally ill Individual In Custody.

15

# COUNT III.

PRISON STAFF, AND MENTAL HEALTH FOR NEGLIGENCE AND DELIBERATE INDIFFERENCE. AND MENTAL HEALTH FOR THEIR PERSISTANCE IN AN INEFFECTIVE COURSE OF TREATMENT DURING THE SIX MONTHS PLAINTIFF WAS UNDER THEIR CRISIS WATCH CARE.

Over the course of six months of being on crisis watch Plaintiff was allowed and sometimes encouraged to self-mutilate: Prison Guards Brooks and Choate was often times the 5 day Prison Guards who conducted the shake downs and would leave items to cut up with. Brooks on one occasion after shaking down, told mr. Bentley "instead of swallowing the wire if you use it lack a hacksaw it will cut clean through your bone." It got to the point that after Brooks or Choate would shake his cell down Plaintiff knew to look around that he would find something. He almost always found something left behind to use. During the entire six months he spoke with different Mental Health Professions. That being ms. Buettner, ms. Mabrey, ms. Draper, and ms. Morris the Supervisor. They all would tell plaintiff the same thing that he was just misbehaving and that he wasn't hurting no one but himself. Not one of them took the initiative to find out why was these items constantly popping up in his cell for him to self-mutilate with. No one took his mental illness serious, saying his self-mutilations was going to keep him segregation forever. After ms. Morris told him this he informed her that he didn't feel safe and he felt that one day he would be found dead, because he fear staff would let him die.

16

MS. Morris, failed to recommend that Plaintiff be release from his long term Solitary Confinement Sentence, which more than likely exacerbated his mental illness and compulsion to Self-mutilate. The devastating effects of prolonged isolation has had a major effect on Plaintiff. Yet Ms. Morris has not put Plaintiff on a emergency transfer to a facility that can give him the help he needs. When Plaintiff asked Ms. Buettner why do her Ms. Draper, and Ms. Mabrey say the same thing about him acting childish and self harming out of misbehaving. Ms. Buettner said because they have weekly meetings about their case loads and that all of them had come to the conclusion that Plaintiff was only misbehaving when he attempted Suicide or Self-mutilations. Major Rowland came in the interview room one of the days close to Plaintiff being released from crisis watch, and told Plaintiff that he had read alot of his grievances. He told Mr. Bentley "he was tired of the games, that he was going to have him taken off of crisis watch, and have him placed in the back of the gallery so if he wanted to kill himself he could do it in peace and stop causing his staff problems. But that there was also a flip side, and if he didn't kill himself and stayed out of trouble he would allow Plaintiff to receive his T.V. Privileges." Mr. Bentley told major Rowland "that he just wanted to get some help and that he didn't like cutting on himself, but it was hard on him being here and that he didn't know why he felt so hopeless. Major Rowland told Mr. Bentley you don't need help, you need your 'a——' Kicked. Mr. Bentley was forced off of crisis watch either 2 or 3 days later. Major Rowland abused his authority and shouldn't have had any say so over the matter of when Plaintiff came off crisis watch. To this very day of the writing of this complaint Plaintiff still has it received any different treatment Plan from mental Health staff here at Menard Correctional Center Prison.

END OF COMPLAINT.

## <u>REQUEST FOR RELIEF</u>

$10,000.00 against each of the defendants in the form of compensatory damages.

$10,000.00 against each of the defendants in the form of punitive damages.

$25,000.00 against any and all defendants responsible, for pain and suffering, as well as,

$25,000.00 against any and all defendants responsible, in the form of punitive damages, for ~~the~~ inadequate mental health evaluations -and or- practices.

$25,000.00 against any and all defendants responsible for the egregiously negligent shake downs which left items in cell so that Plaintiff could self-mutilate.

$25,000.00 against any and all defendants responsible for not following procedure regarding inmate safety.

$50,000.00 against any and all defendants responsible for unnecessary ~~and~~ excessive force.

18

## V.     REQUEST FOR RELIEF

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

and lastly, a court ordered transfer to a facility (Prison) Correctional center where I can get the mental Health care that I need, and whatever else this Honorable Court deems just and proper. And all, in their individual capacity; and official capacity if this court deem it to be proper.

## VI.     JURY DEMAND (*check one box below*)

The plaintiff ☐ does ☒ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: X  1/2/23
(date)

X Dominique Bentley
Signature of Plaintiff

X 711 KasKasKia Street
Street Address

X Dominique Bentley
Printed Name

X Menard, IL 62259
City, State, Zip

X M16347
Prisoner Register Number

N/A
Signature of Attorney (if any)

Rev. 10/3/19

19

*Exhibits A0*

ILLINOIS DEPARTMENT OF CORRECTIONS
## Disciplinary Report

**Type of Report:**
■ Disciplinary    ☐ Investigative    Facility: Menard CC    Date: 3/30/2022

Name of Individual in Custody: Bentley, Dominique    ID #: M16347    SMI: ☑ yes ☐ no    Race: Blk

Observation Date: 3/30/2022    Approximate Time: 10:30    ■ a.m. ☐ p.m.    Location: North 2 5-16

**Offense(s): DR 504:**    215- Disobeying a direct order essential to safety and security

**Observation:** (NOTE: Each offense identified above must be substantiated.)

On the above date and approximate time, I c\o Hoffman 6448 was assigned to North 2 Continuous Watch officer, I observed Individual in Custody Bentley, Dominique M16347 was cutting on his inner arm with his fingernail. I gave Bentley multiple direct orders to stop, which he refused to comply. I radioed Sgt Royster to report to cell N2 5-16. Sgt Royster gave Bentley multiple direct orders to stop cutting on his inner arm, which he refused to comply. Sgt Royster administered a burst of OC and gave Bentley another direct order to stop cutting his arm, which he complied. Bentley was then placed in hand-cuffs and escorted to North 2 Infirmary. Individual in Custody Bentley, Dominique M16347 was properly identified by state issue ID and O360. Proper chain of command notified. End of Report.

**Witness(es):** Sgt Royster

☐ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| R. Hoffman | 6448 | *[signature]* | 3/30/2022 | 2:00 | ☐ a.m. ■ p.m. |
|---|---|---|---|---|---|
| **Reporting Employee (Print Name)** | **Badge #** | **Signature** | **Date** | **Time** | |

---

**Disciplinary Action:**

**Shift Review:** ☒ Temporary Confinement    ☐ Investigative Status    Reasons: _Nature of offense_

_Major Bochantin_                    _Major Bochant_                    3/30/22
**Printed Name and Badge #**    **Shift Supervisor's Signature**    **Date**
                                (For Transition Centers, Chief Administrative Officer)

**Reviewing Officer's Decision:** ☒ Confinement reviewed by Reviewing Officer    Comment: _out, mw_

☒ **Major Infraction,** submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ **Minor Infraction,** submitted to Program Unit

_[signature]_                    _[signature]_                    3/30/22
**Print Reviewing Officer's Name and Badge #**    **Reviewing Officer's Signature**    **Date**

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

**Print Hearing Investigator's Name and Badge #**    **Hearing Investigator's Signature**    **Date**

---

### Procedures Applicable to all Hearings on Investigative and Disciplinary Reports

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

### Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if individual in custody refused to sign    Individual in Custody's Signature    ID#

**Serving Employee (Print Name)**    **Badge #**    **Signature**
                                                    ☐ a.m. ☐ p.m.

**Date Served**    **Time Served**

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Individual in Custody's Signature    ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

**Date of Disciplinary Report**    **Print individual in custody's name**    **ID#**

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

Distribution:    Master File
                Individual in Custody

*Printed on Recycled Paper*

DOC 0317 (Rev. 7/2021)

*20*

ILLINOIS DEPARTMENT OF CORRECTIONS

## Disciplinary Report

Exhibit B1

| Type of Report: | Facility: Menard CC | Date: 05-02-2022 |
|---|---|---|
| ☑ Disciplinary   ☐ Investigative | | |

| Name of Individual in Custody: Bentley, Dominique | ID #: M16347 | SMI: ☐ yes ☐ no | Race: BLK |
|---|---|---|---|

Observation Date: 05-02-2022    Approximate Time: 10:50  ☑ a.m. ☐ p.m.    Location: North 2 5-16

Offense(s): DR 504: 202. Damage or Misuse of Property, 308 - Contraband / Unauthorized Property

**Observation**: (NOTE: Each offense identified above must be substantiated.)

On May 2, 2022, at approximately 10:50am, I C/O House was preforming a cell search in North 2 5-16 where Individual in Custody Bentley, Dominique (M16347) resides and sole occupant on a 15 minute crisis watch. While searching 5-16 a crisis smock was located and searched, while searching the smock I found 4 tears each tear containing contraband items. I removed 3 pieces of what appeared to be wire and 1 piece of what appeared to be part of fingernail clippers in his Crisis Smock. A DOC 0300 was properly filled out and proper chain of command was notified. Individual in Custody Bentley, Dominique (M16347) was identified by state issued ID and O360.

Witness(es): _____

☐ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| H. House | 9369 | | 05-02-2022 | 11:12 | ☑ a.m. ☐ p.m. |
|---|---|---|---|---|---|
| **Reporting Employee (Print Name)** | **Badge #** | **Signature** | **Date** | **Time** | |

---

### Disciplinary Action:

**Shift Review:** ☑ Temporary Confinement    ☐ Investigative Status    Reasons: Nature of Charges

| | | |
|---|---|---|
| **Printed Name and Badge #** | **Shift Supervisor's Signature** (For Transition Centers, Chief Administrative Officer) | **Date** |

**Reviewing Officer's Decision:** ☑ Confinement reviewed by Reviewing Officer    Comment: _____

☑ **Major Infraction,** submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ **Minor Infraction,** submitted to Program Unit

| | | |
|---|---|---|
| **Print Reviewing Officer's Name and Badge #** | **Reviewing Officer's Signature** | **Date** |

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

| | | |
|---|---|---|
| **Print Hearing Investigator's Name and Badge #** | **Hearing Investigator's Signature** | **Date** |

### Procedures Applicable to all Hearings on Investigative and Disciplinary Reports

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

### Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if individual in custody refused to sign

| | | |
|---|---|---|
| | **Individual in Custody's Signature** | **ID#** |

| | | | |
|---|---|---|---|
| **Serving Employee (Print Name)** | **Badge #** | | **Signature** |
| | | ☐ a.m. ☐ p.m. | |
| **Date Served** | **Time Served** | | |

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

| | |
|---|---|
| **Individual in Custody's Signature** | **ID#** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### (Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)

| | | |
|---|---|---|
| **Date of Disciplinary Report** | **Print individual in custody's name** | **ID#** |

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

| Distribution: Master File Individual in Custody | *Printed on Recycled Paper* | DOC 0317 (Rev. 7/2021) |
|---|---|---|

ILLINOIS DEPARTMENT OF CORRECTIONS
## Disciplinary Report

*Exhibit C 1*

**Type of Report:**
☑ Disciplinary    ☐ Investigative

Facility: **Menard Correctional Center**    Date: 06/11/2022

Name of Individual in Custody: **Bentley, Dominique**    ID #: **M16347**    SMI: ☑ yes ☐ no    Race: **Black**

Observation Date: **06/11/2022**    Approximate Time: **1:00**    ☐ a.m. ☑ p.m.    Location: **North II Cellhouse, cell 5-14**

**Offense(s): DR 504:**    215 - Disobeying a Direct Order Essential to Safety and Security

**Observation:** (NOTE: Each offense identified above must be substantiated.)

On Saturday, June 11th, 2022, at approximately 1:00pm, I T/A Sgt Akins, R. #9151 was notified by C/O Garcia #13744 that while making Crisis Watch rounds noticed blood coming from underneath the cell door of North 2: 5-14 where Individual in Custody Bentley, Dominique (M16347) is the sole occupant. This T/A Sgt then went with C/O Garcia to the cell front to find him actively self-harming on his left arm around the elbow area. I then gave him multiple orders to stop self-harming, all of which Bentley did not comply with. I then administered a burst of OC pepper spray to gain compliance and stop the self harming. Bentley was then placed in handcuffs and escorted to the North 2 Infirmary where he utilized the eye station. Bentley was then evaluated by Medical Care staff and Mental Health Staff. A cell search was performed where a piece of metal appearing to be a paper clip was found. A DOC300 was completed and the contraband

**Witness(es):** _____

☐ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| T/A Sgt. R. Akins | 9151 | *signature* 9151 | 06/11/2022 | 1:50 | ☐ a.m. ☑ p.m. |
|---|---|---|---|---|---|
| **Reporting Employee (Print Name)** | **Badge #** | **Signature** | **Date** | **Time** | |

### Disciplinary Action:

**Shift Review:** ☑ Temporary Confinement    ☐ Investigative Status    Reasons: _____ of offense

MAJOR Reed #585

**Printed Name and Badge #**    **Shift Supervisor's Signature** (For Transition Centers, Chief Administrative Officer)    **Date** 6-11-22

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer    Comment: _____

☑ **Major Infraction,** submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ **Minor Infraction,** submitted to Program Unit

**Print Reviewing Officer's Name and Badge #**    **Reviewing Officer's Signature**    **Date** 6/11/22

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

**Print Hearing Investigator's Name and Badge #**    **Hearing Investigator's Signature**    **Date**

### Procedures Applicable to all Hearings on Investigative and Disciplinary Reports

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

### Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☑ Check if individual in custody refused to sign    **Individual in Custody's Signature**    **ID#**

Frederking    13739    F1
**Serving Employee (Print Name)**    **Badge #**    **Signature**

6-11-22    904    ☐ a.m. ☑ p.m.
**Date Served**    **Time Served**

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

**Individual in Custody's Signature**    **ID#**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### (Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)

**Date of Disciplinary Report**    **Print individual in custody's name**    **ID#**

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

**Print Name of witness**    **Witness badge or ID#**    **Assigned Cell** (if applicable)    **Title (if applicable)**

Witness can testify to: _____

**Print Name of witness**    **Witness badge or ID#**    **Assigned Cell** (if applicable)    **Title (if applicable)**

Witness can testify to: _____

Exhibit
C 2



ILLINOIS DEPARTMENT OF CORRECTIONS

**Disciplinary Report Continuation Page**

**Menard CC**

Facility

☑ Disciplinary Report    ☐ Investigative Report    ☐ Disciplinary Summary    ☐ Adjustment Committee Summary

Report/Incident Date: **06/11/2022**                    Incident # (if applicable): _____

Individual in Custody Information:

Name: **Bentley, Dominique**                                    ID #: **M16347**

Use the space below to provide any additional information.

was turned in for evidence. Before returning Bentley to his assigned cell, he was searched by a metal detector to detect if he had metal in his possession. Proper Chain of Command was notified. Bentley was Identified by O360 and State ID. EOR

Page **2** of **2**

Distribution: Master File, Individual in Custody          Printed on Recycled Paper          DOC 0318 (Rev. 7/2021)

23

Exhibit
D.R 2.

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Disciplinary Report**

**Type of Report:**
■ Disciplinary    ☐ Investigative    Facility: Menard C.C.    Date: 07-15-2022

Name of Individual in Custody: Bentley, Dominique    ID #: M16347    SMI: ☑ yes ☐ no    Race: Black

Observation Date: 07-15-2022    Approximate Time: 8:50    ■ a.m. ☐ p.m.    Location: N2 5-13

**Offense(s): DR 504:** 101- Arson. 202- Damage or Misuse of Property. 215- Disobeying a Direct Order Essential to Safety and Security.

**Observation:** (NOTE: Each offense identified above must be substantiated.)

On Friday July 15, 2022 at approximately 8:50am, I, C/O R. Akins (#9151), was escorting Mental Health Professional Mabrey down 5 gallery in North II Cellhouse to see Individual in Custody Bentley, Dominique (M16347) when I noticed smoke coming from the State issued mattress inside of N2-5-13 which was occupied by Individual in Custody Bentley (M16347). I then notified the gallery officer, C/O T. Choate (#9978) of the potential fire in the cell and I went to get a fire extinguisher located in the NII Infirmary. Upon arriving back at Individual in Custody Bentley (M16347) cell, there was visible fire in the cell. I then gave multiple direct orders for Individual in Custody Bentley (M16347) to come cellfront to be placed in handcuffs but he refused all direct orders so I then administered the fire extinguisher on the fire to put out the fire. Individual in Custody Bentley (M16347) was then placed in handcuffs and removed from the cell.

**Witness(es):** _____

☐ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| C/O R. Akins | 9151 | _Kata Cerin /9151_ | 07-15-2022 | 9:45 | ■ a.m. ☐ p.m. |
|---|---|---|---|---|---|
| **Reporting Employee (Print Name)** | **Badge #** | **Signature** | **Date** | **Time** | |

---

**Disciplinary Action:**

**Shift Review:** ☐ Temporary Confinement    ☐ Investigative Status    Reasons: _____

**Printed Name and Badge #** _____    **Shift Supervisor's Signature** (For Transition Centers, Chief Administrative Officer)    **Date**

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer    Comment: _____

☐ **Major Infraction,** submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ **Minor Infraction,** submitted to Program Unit

**Print Reviewing Officer's Name and Badge #** _____    **Reviewing Officer's Signature** _____    **Date**

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

**Print Hearing Investigator's Name and Badge #** _____    **Hearing Investigator's Signature** _____    **Date**

---

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if individual in custody refused to sign    **Individual in Custody's Signature** _____    **ID#** _____

**Serving Employee (Print Name)** _____    **Badge #** _____    **Signature** _____
☐ a.m. ☐ p.m.

**Date Served** _____    **Time Served** _____

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

**Individual in Custody's Signature** _____    **ID#** _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

**Date of Disciplinary Report** _____    **Print individual in custody's name** _____    **ID#** _____

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

**Print Name of witness** _____    **Witness badge or ID#** _____    **Assigned Cell** (if applicable)    **Title** (if applicable)

Witness can testify to: _____

**Print Name of witness** _____    **Witness badge or ID#** _____    **Assigned Cell** (if applicable)    **Title** (if applicable)

Witness can testify to: _____

Distribution:    Master File
                 Individual in Custody

_Printed on Recycled Paper_

DOC 0317 (Rev. 7/2021)

24

EXHIBIT
D2

ILLINOIS DEPARTMENT OF CORRECTIONS
### Disciplinary Report Continuation Page

Menard C.C.
_____
Facility

☑ Disciplinary Report    ☐ Investigative Report    ☐ Disciplinary Summary    ☐ Adjustment Committee Summary

Report/Incident Date: **07-15-2022**                    Incident # (If applicable): _____

**Individual in Custody Information:**
Name: **Bentley, Dominique**                        ID #: **M16347**

Use the space below to provide any additional information.

We then took him to the North II Infirmary to be seen by Menard HCU Nurse and Mental Health Professional. Proper Chain of Command was then notified. Individual in Custody Bentley, Dominique (M16347) was identified by State ID and O360. EOR

Page  2  of  2

Distribution: Master File, Individual in Custody        Printed on Recycled Paper        DOC 0318 (Rev. 7/2021)



1-10-23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

### ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Bentley, Dominique                    M16347
_____Name_____                    _____ID Number_____

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.  Is this a new civil rights complaint or habeas corpus petition?     Yes or (No)

    If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2.  Is this an Amended Complaint or an Amended Habeas Petition?     Yes or (No)

    If yes, please list case number: _____ N/A _____

    If yes, but you do not know the case number mark here: _____

3.  Should this document be filed in a pending case?     Yes or (No)

    If yes, please list case number: _____ N/A _____

    If yes, but you do not know the case number mark here: _____

4.  Please list the total number of pages being transmitted:     33

5.  If multiple documents, please identify each document and the number of pages for each document.  For example:  Motion to Proceed In Forma Pauperis, 6 pages;  Complaint, 28 pages.

| Name of Document | Number of Pages |
|---|---|
| – Complaint | 19 |
| – Exhibits | 6 |
| – Motion For Recruitment of Counsel | 2 |
| – Motion To Proceed Without Costs and Trust Fund Certification and Statements | 6 |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record.  Discovery materials sent to the Court will be returned unfiled.