IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DOMINIQUE BENTLEY, #M16347, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cv-00048-SMY |
| | ) |
| CARRI MORRIS, | ) |
| S. BUETTNER, | ) |
| MS. DRAPER, | ) |
| MABREY, | ) |
| MAJOR ROWLAND, | ) |
| C/O BROOKS, | ) |
| ROYSTER, | ) |
| AKINS, | ) |
| BENT, | ) |
| CHOATE, | ) |
| HOFFMAN, | ) |
| JOHN DOE 1, | ) |
| and JOHN DOE 2, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Dominique Bentley, an inmate in the custody of the Illinois Department of Corrections, filed this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations at Menard Correctional Center. The Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A. Any portion that is legally frivolous or malicious, fails to state a claim, or seeks money damages from an immune defendant must be dismissed. *Id*.

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-17): Plaintiff suffers from severe depression with a history of suicide attempts involving self-mutilation. His symptoms intensified during his long-term placement in segregation at Menard, and he was

1

ultimately placed on crisis watch January to July 2022. While there, Plaintiff was denied mental health treatment, actively encouraged to commit suicide, and punished when he attempted to do so.

Plaintiff initially asked Officer Bent to speak with a mental health professional (MHP) about his suicidal urges on January 14, 2022. Bent said he "d[id]n't have time for that right now." *Id*. Minutes later, a shower guard, John Doe 1, summoned Plaintiff for his shower. Plaintiff made the same request of him and received virtually the same response. The shower guard also told Plaintiff to ask his gallery officer (Bent) for an appointment with mental health, but Bent had just denied his request. Plaintiff was given the option of going to the shower or staying in his cell. Plaintiff chose to go to the shower and, once there, attempted suicide. Officer Doe 1 found him bleeding and unresponsive. He wrapped his cut arms, cuffed him, and escorted him to the prison's infirmary. Plaintiff was assessed by mental health and placed on suicide watch.

Carri Morris, the mental health supervisor, forced Plaintiff to take psychotropic medication to stop his suicidal urges, but the medication did not work. He continued to inflict self-harm using items he found in his cell. Even as he requested additional monitoring, the MHPs scaled back his wellness checks from 6- to 2- checks per hour. Plaintiff had ample opportunity to inflict self-harm between these checks.

Instead of treating Plaintiff, prison officials began punishing him for his suicide attempts. Each time they discovered him inflicting self-harm, the guards would spray him with pepper spray and issue him a disciplinary ticket.

On March 30, 2022, Officer Hoffman observed Plaintiff using a sharpened paperclip to cut himself. Hoffman said, "I don't care if you die." He then summoned Officer Royster, who said he was "tired of his (Mr. Bentley's) games" and sprayed him with "act right juice" (*i.e.* pepper

spray). The officers then gave Plaintiff a disciplinary ticket for possession of the paperclip. The "Prison Guard House"[1] issued Plaintiff a ticket following another incident that occurred on May 2, 2022.

On June 11, 2022, Officer John Doe 2 left a paperclip in Plaintiff's cell when conducting a shakedown. Plaintiff used the paperclip to cut himself. Officer Garcia[2] and Sergeant Akins found him bleeding, doused him with pepper spray, and issued him a disciplinary ticket. They did not confiscate the paperclip, and Plaintiff used it to inflict self-harm the next day.

On July 14, 2022, Plaintiff discovered a book of matches that someone left in his cell and used them to set his mattress on fire on July 15, 2022. Officer Akins and MHP Mabrey discovered the cell fire, called Officer Choate for assistance, and then sprayed Plaintiff, the mattress, and Plaintiff[3] again with the fire extinguisher. Plaintiff received a ticket.

Officers Brooks and Choate served as the "5-day prison guards" in Plaintiff's gallery. Both officers routinely left behind dangerous objects when conducting shakedowns of his cell. Plaintiff learned to expect these items after every shakedown, and he used them to attempt suicide. Brooks even recommended suicide strategies by suggesting on at least one occasion that Plaintiff use wire "like a hacksaw" to "cut clean through your bone" instead of swallowing it. *Id*. at 15. Major Rowland met with him and said that he decided to transfer Plaintiff back to the gallery, where he could kill himself "in peace" without staff interference. When Plaintiff explained that he needed help to stop hurting himself, Rowland said he just needed "his a** kicked." Plaintiff was removed from crisis watch 2-3 days later, and his treatment plan was not modified.

---

[1] Plaintiff names no one in connection with this suicide attempt, and he asserts no claim against a defendant for it.
[2] Plaintiff does not name Garcia as a defendant, so any claims against this individual shall be considered dismissed.
[3] Plaintiff was not on fire.

MHP Buettner, Mabrey, Draper, and Morris responded to Plaintiff's ongoing suicide attempts by saying he was "misbehaving" and "hurting no one but himself." *Id*. at 16. Morris would not recommend his removal from long term segregation or his transfer to a facility that could meet his mental health needs *Id*. at 16-17.

## Discussion

Based on the allegations, the Court finds it convenient to designate the following claims in the *pro se* Complaint:

**Count 1:** Eighth Amendment claim against Bent and John Doe 1 for denying Plaintiff's request for mental health treatment and/or crisis intervention before he attempted suicide on January 14, 2022.

**Count 2:** Eighth Amendment claim against Morris for forcing Plaintiff to take psychotropic medication that did not curb his suicide attempts or his urge to self-mutilate in 2022.

**Count 3:** Eighth Amendment claim against Buettner, Mabrey, Draper, and Morris for denying Plaintiff mental health treatment before and after his numerous suicide attempts in 2022.

**Count 4:** Eighth Amendment claim against Royster and Hoffman for failing to protect Plaintiff from a serious risk of self-harm, spraying him with pepper spray when he inflicted self-harm, and issuing him a disciplinary ticket for his suicide attempt on March 30, 2022.

**Count 5:** Eighth Amendment claim against John Doe 2 and Akins for failing to protect Plaintiff from the serious risk of self-harm, spraying him with pepper spray when he inflicted self-harm, and issuing him a disciplinary ticket for his suicide attempt on June 11, 2022.

**Count 6:** Eighth Amendment claim against Akins and Mabrey[4] for failing to protect Plaintiff from the serious risk of self-harm from matches in his cell, spraying him unnecessarily with a fire extinguisher when he was not on fire, and issuing him a disciplinary ticket for his suicide attempt on July 15, 2022.

**Count 7:** Eighth Amendment claim against Brooks, Choate, and Rowland for actively encouraging Plaintiff to inflict self-harm in 2022.

---

[4] Plaintiff alleges that Akins radioed for help from Choate, but he does not allege that Choate ever showed up.

**Any other claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[5]

The Eighth Amendment prohibits cruel and unusual punishment of convicted persons. U.S. CONST., amend VIII. A plaintiff bringing an Eighth Amendment claim must demonstrate a sufficiently serious harm and show that each defendant acted with deliberate indifference to his health or safety. *Kupsky v. McLaren*, 748 F. App'x 74 (7th Cir. 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted)). Here, Plaintiff's severe depression and suicide attempts constitute a sufficiently serious harm to support a constitutional claim. *Kupsky*, 748 F. App'x at 76 (citing *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012)).

Deliberate indifference occurs when a prison official is aware that a prisoner "may imminently seek to take his own life and . . . fail[s] to take reasonable steps to prevent the inmate from performing this act." *Kupsky*, 748 F. App'x at 76 (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001) (internal quotation marks omitted)). The allegations adequately state deliberate indifference claims against each defendant for denying Plaintiff adequate mental health treatment, actively encouraging him to inflict self-harm, and punishing him for doing so. Accordingly, Counts 1 through 7 will proceed against the defendants named in connection with each claim above.

---

[5] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Identification of Unknown Defendants**

Plaintiff may proceed with his claims against John Doe 1 and John Doe 2, once these defendants are identified. Plaintiff will have the opportunity to engage in limited discovery to ascertain their identity. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). The Current Warden of Menard Correctional Center (official capacity only) will be added to the docket in CM/ECF for purposes of responding to discovery aimed at identifying these unknown defendants. Once their names are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of their generic designations in the case caption and through the Complaint.

**Request for Transfer**

In the Complaint, Plaintiff alleges that he requested transfer to another prison, and he seeks a transfer (among other things) in his request for relief. (Doc. 1, p. 19). Plaintiff does not request this relief on an emergency basis, and he has not filed a motion for a temporary restraining order and/or preliminary injunction. He also has not invoked Federal Rule of Civil Procedure 65, governing both. The Court thus construes his request as one for relief *at the close of this case*. However, Plaintiff may file a Motion for TRO and/or Preliminary Injunction under Rule 65, if he requires relief while the action is pending. If he chooses to do so, Plaintiff should describe the exact relief he needs and state the facts that support his request for this relief.

**Disposition**

The Complaint (Doc. 1) survives screening pursuant to 28 U.S.C. § 1915A. **COUNTS 1 through 7** will proceed against the below defendants, in their individual capacities:

- **Count 1** against **BENT** and **JOHN DOE 1**;
- **Count 2** against **MORRIS**;

- **Count 3** against **BUETTNER, MABREY, DRAPER,** and **MORRIS**;

- **Count 4** against **ROYSTER** and **HOFFMAN**;

- **Count 5** against **JOHN DOE 2** and **AKINS**;

- **Count 6** against **AKINS** and **MABREY**; and

- **Count 7** against **BROOKS, CHOATE,** and **ROWLAND**.

The **CURRENT WARDEN OF MENARD CORRECTIONAL CENTER**, in his or her official capacity only, is **ADDED** as a defendant for purposes of identifying the two unknown defendants and implementing any injunctive relief ordered herein.

The Clerk shall prepare for Defendants **CURRENT WARDEN OF MENARD CORRECTIONAL CENTER (official capacity only), BENT, MORRIS, BUETTNER, MABREY, DRAPER, ROYSTER, HOFFMAN, AKINS, BROOKS, CHOATE, ROWLAND,** and, once identified, **JOHN DOE 1** and **JOHN DOE 2**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be

retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

**The Clerk's Office is DIRECTED to ADD Defendant CURRENT WARDEN OF MENARD CORRECTIONAL CENTER (official capacity only) in CM/ECF and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED**.

**DATED: 10/20/2023**

s/*Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

**Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.