# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

DOMINIQUE BENTLEY,                )
                                  )
            Plaintiff,            )
                                  )
vs.                               )    Case No. 3:23-CV-48-MAB
                                  )
CARRI MORRIS, *et al.*,           )
                                  )
            Defendants.           )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on two motions for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies (Docs. 76, 83). For the reasons set forth below, Defendant Mabrey's motion is GRANTED in part and DENIED in part (Doc. 76); and Defendants Bent, Akins, Brooks, Choate, Hoffman, Knight, Maldonado, Morris, Rowland, and Royster's exhaustion-based Motion for Summary Judgment is GRANTED in part and DENIED in part (Doc. 83). Additionally, Plaintiff's Motion for Status is GRANTED (Doc. 91).

## BACKGROUND

Plaintiff Dominique Bentley filed this civil rights action on January 10, 2023, pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations that occurred while he was housed at Menard Correctional Center (Doc. 1). Plaintiff's Complaint alleges that he suffers from severe depression and has a history of suicide attempts and self harm (Doc. 14 at p. 1). Plaintiff's mental health worsened, and his symptoms intensified during his long-term placement in segregation at Menard (*Id.* at pp. 1-2).

On January 14, 2022, Plaintiff asked Defendant Quinnton Bent if he could speak with a mental health professional (*Id.* at p. 2). Defendant Bent did not take Plaintiff's request seriously and told him he did not have time to give him attention (*Id.*). Plaintiff was then summoned for a shower by a guard, later identified to be Defendant Kylan Knight (*see* Doc. 64; Doc. 14 at p. 2). Plaintiff again requested to speak with a mental health professional but was denied for similar reasons (Doc. 14 at p. 2). In addition, Defendant Knight told Plaintiff he should ask his gallery officer, Defendant Bent, for an appointment with mental health (*Id.*). Plaintiff then attempted to commit suicide while in the shower (*Id.*). Following this incident, Plaintiff was assessed by mental health staff and placed on suicide watch (*Id.*).

Thereafter, Plaintiff alleges that he was forced to take ineffective psychotropic medication by Defendant Carri Morris, Menard's mental health supervisor (*Id.*) Plaintiff continued to harm himself using items found in his cell, and even though he requested additional monitoring, his wellness checks were scaled back from six per hour to just two per hour (*Id.*). Plaintiff also alleges that prison officials began punishing him every time they observed him inflicting self-harm (*Id.*). In one such instance, on March 30, 2022, Defendant Robert Hoffman observed Plaintiff using a paperclip to cut himself and told him he didn't care if he died (*Id.*). Defendant Hoffman then summoned Defendant Philip Royster, who said he was tired of Plaintiff's games and then sprayed him with pepper spray, which he referred to as "act right juice" (*Id.* at pp. 2-3). Additionally, Plaintiff was issued a disciplinary ticket for his possession of the paperclip (*Id.* at p. 3).

On June 22, 2022, Defendant Alex Maldonado left a paperclip in Plaintiff's cell while conducting a shakedown (*Id.*). Plaintiff used the paperclip to cut himself and was found bleeding in his cell by Defendant Richard Akins and another guard (*Id.*). Defendant Akins and the other guard doused Plaintiff with pepper spray and issued him a ticket, but did not confiscate the paperclip, which led to Plaintiff attempting to harm himself again the next day (*Id.*).

On July 15, 2022, Plaintiff used a book of matches he had found in his cell to set his mattress on fire (*Id.*). Defendant Akins and Defendant Virginia Mabrey discovered the cell fire and called Defendant Tyson Choate for assistance (*Id.*). Those Defendants then sprayed Plaintiff and his mattress with a fire extinguisher, before issuing him another disciplinary ticket (*Id.*). Plaintiff's Complaint further alleges that Defendants Terry Brooks, Trevor Rowland, and Choate all were indifferent to his mental health needs, both by leaving dangerous objects within his cell and making inappropriate comments related to Plaintiff's mental health and suicide attempts (*Id.*).

The Court conducted a preliminary review pursuant to 28 U.S.C. § 1915A and Plaintiff's original Complaint was permitted to proceed on the following claims:

| | |
|---|---|
| **Count 1:** | Eighth Amendment claim against Bent and [Knight] for denying Plaintiff's request for mental health treatment and/or crisis intervention before he attempted suicide on January 14, 2022. |
| **Count 2:** | Eighth Amendment claim against Morris for forcing Plaintiff to take psychotropic medication that did not curb his suicide attempts or his urge to self-mutilate in 2022. |
| **Count 3:** | Eighth Amendment claim against Buettner, Mabrey, Draper, and Morris for denying Plaintiff mental health treatment before and after his numerous suicide attempts in 2022. |

**Count 4:**   Eighth Amendment claim against Royster and Hoffman for failing to protect Plaintiff from a serious risk of self-harm, spraying him with pepper spray when he inflicted self-harm, and issuing him a disciplinary ticket for his suicide attempt on March 30, 2022.

**Count 5:**   Eighth Amendment claim against [Maldonado] and Akins for failing to protect Plaintiff from the serious risk of self-harm, spraying him with pepper spray when he inflicted self-harm, and issuing him a disciplinary ticket for his suicide attempt on June 11, 2022.

**Count 6:**   Eighth Amendment claim against Akins and Mabrey for failing to protect Plaintiff from the serious risk of self-harm from matches in his cell, spraying him unnecessarily with a fire extinguisher when he was not on fire, and issuing him a disciplinary ticket for his suicide attempt on July 15, 2022.

**Count 7:**   Eighth Amendment claim against Brooks, Choate, and Rowland for actively encouraging Plaintiff to inflict self-harm in 2022.

(*Id.* at pp. 4-7).[1]

On June 27, 2024, Defendant Mabrey filed a Partial Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 76, 77). On that same day, Defendants Sherri Buettner and Rhiana Draper withdrew their affirmative defense of failure to exhaust administrative remedies (Doc. 75; *see also* Doc. 79). On September 20, 2024, Defendants Bent, Akins, Brooks, Choate, Hoffman, Knight, Maldonado, Morris, Rowland, and Royster filed their Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Docs. 83, 84). Thereafter, pursuant to the Court's Order (Doc. 82), Plaintiff filed a response in opposition to Defendants' motions on

---

[1] Defendants Knight and Maldonado were originally named as John Does 1 and 2, respectively (Doc. 14 at pp. 6-7). Plaintiff then identified and successfully moved to substitute Defendant Knight for John Doe 1, and Defendant Maldonado for John Doe 2 (Docs. 63, 64).

October 16, 2024 (Doc. 87). No replies in support were filed by Defendants, and Plaintiff has since filed a motion for status (Doc. 91).

## LEGAL STANDARD

### I.    Summary Judgment Standards

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). This means courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

### II.    Exhaustion Requirements

As outlined in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the

prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

III.    *IDOC Grievance Procedures*

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days

from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

## Discussion

The parties have provided the Court with numerous grievances and accompanying administrative documents from the period in question. In order to streamline the review process, the Court first reviews the grievance records to determine whether Plaintiff 'procedurally exhausted' each relevant grievance by filing "complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Then, the Court will consider the contents of each procedurally exhausted grievance as applied to each specific count that Defendants have moved for summary judgment upon, to determine whether the contents of any relevant,

procedurally exhausted grievance identifies and exhausts Plaintiff's claim as to that count and Defendant. *See* 20 Ill. Admin. Code § 504.810 (c); *Walker v. Harris*, No. 3:19-CV-00664-MAB, 2021 WL 3287832, at *4 (S.D. Ill. Aug. 2, 2021) ("Additionally, even if Plaintiff had properly submitted this grievance through the appropriate institutional channels and then to the ARB prior to filing this lawsuit, the contents of this grievance are not specific enough to exhaust the claim against Defendant Harris."). *See also Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) ("Grievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit.").

## I.    *Plaintiff's Grievances*

### a.    *Grievance No. 57-1-22, dated 1/3/22 (Doc. 77-2, pp. 26-27)*

Plaintiff filed Grievance No. 57-1-22 on January 3, 2022 (Doc. 77-2 at pp. 26-27). In that grievance, Plaintiff grieves that after being placed on crisis watch, mental health never checked in on him and instead just recommended that he do a maximum of six months of restrictive housing (*Id.*). Plaintiff further requested that mental health look over his disciplinary report and that his segregation time be adjusted to account for the underlying mental health reasons that led to him being disciplined (*Id.*).

The Grievance Officer forwarded the grievance to Mental Health for review on January 25, 2022 (*Id.* at p. 24). However, that process took an extended period of time, and the Grievance Officer did not issue a response until August 9, 2022 (*Id.*). In that response, the Grievance Officer recommended Plaintiff's grievance be denied as moot because his ticket was heard according to procedure and he was only given half of the

recommended time in restrictive housing for the infraction he committed (*Id.* at p. 24). The Warden concurred in the Grievance Officer's recommendation one day later (*Id.*). Plaintiff did not appeal that grievance to the ARB (*Id.*; *see also* Doc. 84-2 at p. 1).

Plaintiff has not argued that he timely appealed this grievance to the ARB (and ARB records confirm his failure) after the Warden's decision was issued on August 10, 2022 (Doc. 77-2 at p. 24). Notably, however, Plaintiff filed Grievance No. 57-1-22 on January 3, 2022, over eight months before he received a response from the Grievance Officer and Warden (*Id.*). Given this inexplicably lengthy delay, the Court has considered whether this un-appealed grievance should be treated as procedurally exhausted.

Pursuant to section 504.830(e) of the Illinois Administrative Code, "[t]he Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the written grievance, when reasonably feasible under the circumstances." As the Seventh Circuit has explained, however, section 504.830(e)'s two-month deadline is "aspirational," not mandatory, and parties should not make a beeline for the courts when they don't receive a response within two months. *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). "An aspiration to act quickly 'whenever possible' does not mean that the prison system tosses out the papers and closes the files after two months[.]" *Id.* Conversely, however, the Seventh Circuit has more-recently emphasized that how long a prisoner must wait for an administrative response also depends upon the complexity of the issue being grieved and any information or updates conveyed to the grievant. *See Tullis v. Shaw*, 676 Fed. Appx. 580, 582 (7th Cir. 2017); *Reid v. Balota*, 962 F.3d 325, 331 (7th

Cir. 2020) (finding a two-month period of silence rendered administrative remedies unavailable specifically because the prisoner had no other reason to believe anyone was looking into his grievance). For this reason, the Seventh Circuit held in *Tullis* that "[g]iven the scant record in this case, we think it premature to decide whether, under *Ford*, Tullis should have waited longer for the Director to act on his appeal before he filed suit." *Tullis*, 676 Fed. Appx. at 582. "Tullis received no communication regarding his pending appeal for almost nine months. Yet the defendants have never offered any explanation why the appeal took so long." *Id.*

Here, Defendants have not mentioned Grievance No. 57-1-22 in their motions, let alone attempted to explain why it took over eight months for Plaintiff to receive a response to this grievance. Therefore, given this lengthy delay and Defendants' failure to provide a justification for it (or to provide other documents demonstrating that prison officials updated Plaintiff as to the status of this grievance), the Court will treat Grievance No. 57-1-22 as having been procedurally exhausted.

      b.  *Unnumbered Grievance dated 3/29/22 (Doc. 77-1, p. 28)*

On March 29, 2022, Plaintiff submitted this unnumbered grievance to grieve the physical abuse the guards were inflicting upon him because of his repeated attempts at self-harm and/or suicide (*see* Doc. 77-1 at p. 28). The ARB returned this grievance to Plaintiff on April 20, 2022, because it did not contain the original grievance, responses from the Grievance Officer and the Warden, and did not specify the date the incident occurred. Consequently, the Court concludes that this grievance was not properly exhausted.

c. _Grievance No. 1-4-22, dated 3/31/22 (Doc. 77-1, pp. 25-26)_

Plaintiff submitted Grievance No. 1-4-22 on March 31, 2022 (Doc. 77-1 at pp. 25-
26). In this grievance, Plaintiff indicated that he talked to all the mental health staff
provided by Menard but was still unable to stop harming himself (_Id._). He also alleges
that the correctional officers keep searching his cell and leaving staples, spoons, and
paper clips in his cell that he can then use to cut himself (_Id._).

The Grievance Officer recommended this grievance be denied as moot because
Defendant Morris noted that a treatment team already reviewed whether a residential
treatment unit was necessary (_Id._ at p. 24). The Warden concurred in the recommendation
and Plaintiff appealed the grievance to the ARB (_Id._). The ARB then denied this grievance
because Plaintiff's mental health issues were being addressed and transfers are an
administrative decision (_Id._ at p. 23).

As such, Grievance No. 1-4-22 was procedurally exhausted.

d. _Grievance No. 203-4-22, dated 4/17/22 (Doc. 77-1, p. 22)_

Plaintiff filed Grievance No. 203-4-22 on April 17, 2022 (Doc. 77-1 at p. 22). In this
grievance, Plaintiff wrote that he continued to harm himself, but he no longer reports his
self-harm because "they" are ticketing him for each act of self-harm (_Id._). The Grievance
Officer forwarded the grievance to mental health for review, and then ultimately
recommended the grievance be denied as moot because Plaintiff is already on crisis watch
and seeing mental health daily (_Id._ at p. 21). The Warden concurred in the Grievance
Officer's recommendation and Plaintiff appealed the decision to the ARB (_Id._ at pp. 20-

21). The ARB denied this grievance for failing to meet the requirements of DR504F by not including an incident date that was within the required 60-day timeframe (*Id.* at p. 20).

Here, Plaintiff's grievance was denied on the merits at the facility level, but then later denied for procedural reasons by the ARB. "The Seventh Circuit has made clear that a grievance addressed on the merits at the institution, even where it could have been rejected on procedural grounds, is adequate for exhaustion purposes." *Duvall v. Siddiqui*, 22-CV-00294-SMY, 2024 WL 1072075, at *6 (S.D. Ill. Mar. 12, 2024) (citing *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This is because section 504.810(a) of the Illinois Administrative Code provides Grievance Officers with the discretion to consider and decide untimely grievances on the merits. *See Spraggins v. Baker*, 13-3213, 2015 WL 558293, at *3 (C.D. Ill. Feb. 10, 2015) ("Nor do the Defendants identify any administrative rule that allows the ARB to overrule a discretionary action of the Grievance Officer where the rules clearly place such discretion solely within the Grievance Officer's authority."). And pertinently, "when a grievance officer addresses the grievance based on the merits, rather than procedural grounds, the ARB cannot later examine the grievance based on procedural grounds and cure the error." *Kane v. Santos*, 17-CV-01054-NJR-RJD, 2020 WL 967878, at *4 (S.D. Ill. Feb. 28, 2020).

Accordingly, because the Grievance Officer and Warden denied Grievance No. 203-4-22 on the merits, the Court will treat this grievance as having been procedurally exhausted.

e.   *Grievance No. 167-5-22, dated 5/15/22 (Doc. 77-1, pp. 18-19)*

Plaintiff filed Grievance No. 167-5-22 on May 15, 2022 (Doc. 77-1 at pp. 18-19). In
Grievance No. 167-5-22, Plaintiff grieved that he was not receiving adequate mental
health care and requested a higher level of treatment (*Id.*). He further alleges that
Defendants Draper and Buettner both told him that they don't care if he hurts himself
since he isn't hurting them or anyone else (*Id.*). He further grieved receiving a ticket for
items being in his cell, which he claims were left by staff at Menard (*Id.*).

The Grievance Officer recommended this grievance be denied as moot because
Plaintiff remains on crisis watch and has been provided with a higher level of care (*Id.* at
p. 17). The Warden concurred with the Grievance Officer, which prompted Plaintiff to
appeal the grievance to the ARB (*Id.*). The ARB then denied Plaintiff's grievance because
Plaintiff was already on crisis watch and receiving a higher level of care (*Id.* at p. 16).

Accordingly, Grievance No. 167-5-22 was procedurally exhausted.

f.   *Grievance No. 286-6-22, dated 6/23/22 (Doc. 77-1, pp. 14-15)*

Plaintiff filed Grievance No. 286-6-22 on June 23, 2022 (Doc. 77-1 at pp. 14-15). In
that grievance, Plaintiff alleges that he told Defendant Buettner that he attempted to cut
himself with a spork (*Id.*). Defendant Buettner left, and Plaintiff saw a nurse before being
returned to his cell (*Id.*). Plaintiff claims the same spork was in his cell later that day, so
he used it to cut himself (*Id.*). On two other instances, Plaintiff found other materials such
as copper wire and a paper clip in his cell, which he used to harm himself (*Id.*). After
harming himself with a paper clip on June 11, 2022, Plaintiff was sprayed with mace and
pulled out of his cell (*Id.*). Officers then shook down his cell and took the paper clip he

used to self-harm (*Id.*). However, he found another paper clip in his cell and used it to harm himself the following day (*Id.*). Plaintiff further grieved the ongoing threat his mental health posed and the failure by Defendants Morris and Buettner to do anything to help him (*Id.*).

The Grievance Officer recommended this grievance be denied as moot because he was already on crisis watch, his cell was searched at least once every seven days, and he was receiving crisis treatment (*Id.* at pp. 12-13). The Grievance Officer also noted that it appeared his session with Defendant Buettner was ended when Plaintiff mentioned the spork because medical staff needed to assess him after learning of his admission that he was medically compromised (*Id.*). The Warden concurred in the Grievance Officer's recommendation, and Plaintiff then appealed to the ARB (*Id.*). The ARB then denied the appeal because it was appropriately addressed at the facility level and Plaintiff had appropriate access to mental health and medical care (*Id.* at p. 11).

Accordingly, Grievance No. 286-6-22 was procedurally exhausted.

   g.   *Grievance No. 103-8-22, dated 8/2/22 (Doc. 77-1, pp. 8-9)*

Plaintiff filed Grievance No. 103-8-22 on August 2, 2022 (Doc. 77-1 at pp. 8-9). In that grievance, Plaintiff grieved the incident when he set his mattress on fire on July 15, 2022 (*Id.*). Plaintiff also claims that he told Defendant Morris he needed additional mental health treatment because he continued to harm himself (*Id.*). He further complains that instead of providing him with help, Defendant Morris instead recommended that he be forced to take medication (*Id.* at p. 9).

The Grievance Officer recommended this grievance be denied as moot because, according to Defendant Morris, Plaintiff's residential treatment unit status was pending approval (*Id.* at p. 7). The Warden issued a concurring decision and Plaintiff appealed to the ARB (*Id.*). The ARB denied Plaintiff's grievance because it was appropriately addressed at the facility level and treatment was at the discretion of IDOC physicians (*Id.* at p. 6).

Thus, Grievance No. 103-8-22 was procedurally exhausted.

### h.  *Grievance No. 114-11-22, dated 11/7/22 (Doc. 77-1, pp. 3-4)*

Plaintiff submitted Grievance No. 114-11-22 on November 7, 2022 (Doc. 77-1 at pp. 3-4). In Grievance No. 114-11-22, Plaintiff claimed that his face and left leg were feeling abnormal, but the treatment he received from the nurse had not helped and his requests to see a doctor were being ignored (*Id.*). The Grievance Officer recommended the grievance be denied as moot because the issue had been appropriately addressed by medical, and the Warden concurred (*Id.* at p. 2). Plaintiff appealed to the ARB, who denied the appeal because Plaintiff's concerns had been appropriately addressed at the facility level (*Id.* at p. 1).

In addition to appearing facially unrelated to Plaintiff's claims, this grievance was not properly exhausted because it was not fully exhausted until after Plaintiff had already filed his Complaint (Doc. 1).

### a.  *Grievance No. 238-11-22, dated 11/20/22 (Doc. 77-2, pp. 8-9)*

Plaintiff submitted Grievance No. 238-11-22 on November 20, 2022 (Doc. 77-2 at pp. 8-9). In that grievance, Plaintiff challenged the tickets and related punishment he

received for actions that occurred while he was on crisis watch (*Id.*). The Grievance Officer recommended the grievance be denied as moot because Plaintiff was receiving wellness checks and scheduled with mental health (*Id.* at p. 6). The Warden concurred, and Plaintiff did not appeal the decision to the ARB (*Id.*).

Accordingly, this grievance was not procedurally exhausted.

## II.    _Exhaustion Analysis as Applied to Each Claim and Defendant_

Having thoroughly reviewed all of the grievances provided by Defendants and Plaintiff, the Court has found that Grievance Nos. 57-1-22, 1-4-22, 203-4-22, 167-5-22, 286-6-22, and 103-8-22 were procedurally exhausted and may be applicable to Plaintiff's claims.[2] Accordingly, the Court considers those grievances in relation to the claims raised against the moving Defendants to determine if they identify Defendants and Plaintiff's claim(s) against them. *See Williams v. Luking*, No. 3:21-CV-00448-GCS, 2023 WL 317663, at *3 (S.D. Ill. Jan. 19, 2023) ("Instead, an inmate is only required to 'articulat[e] what facts

---

[2] Plaintiff's Response in Opposition to both exhaustion-based summary judgment motions argues that: (1) Plaintiff exhausted his administrative remedies as to each claim and Defendant, and (2) he sought additional help with the grievance procedure from staff at Menard because of his mental instability, but he was not provided with any additional aid (*see generally* Doc. 87). The Court has already found in Plaintiff's favor under his first argument as to most of his grievances and thus, only briefly addresses his second contention. Undeniably, prisoners are not required to exhaust administrative remedies that are not available to them. *See Weiss v. Barribeau*, 853 F.3d 873, 875 (7th Cir. 2017). Moreover, the Seventh Circuit has found administrative remedies might be unavailable in certain situations where inmates are grappling with serious mental illness and therefore could not comply with the grievance process. *Id.* (finding the defendants had failed to explain how an inmate could have pursued his administrative remedies while suffering a mental breakdown requiring hospitalization). Here, however, while Plaintiff was undoubtedly struggling with his mental health at the time in question, the record clearly demonstrates that Plaintiff was still able to fully utilize and exhaust the administrative remedy process on multiple occasions. *Cf. Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("But when a prisoner's ignorance of the process is not within his control—that is, … because his personal circumstances preclude him from being able to make use of the process, it is not available to him."). For this reason, the Court does not find that the narrow exception of unavailability is generally applicable to all of Plaintiff's grievances. *See Wallace v. Baldwin*, 55 F.4th 535, 543 (7th Cir. 2022) ("This 'unavailable' exception is meant to be narrow.").

the prison could reasonably expect from a prisoner in [his or her] position.'") (quoting *Glick,* Fed. App'x at 582).

> a. <u>Count 1 – Eighth Amendment Claim Against Bent & Knight</u>

Defendants Bent and Knight argue that they are entitled to summary judgment on Count 1 because Plaintiff has not exhausted his administrative remedies as to that claim (Doc. 84 at pp. 9-10). More specifically, Defendants Bent and Knight argue that none of Plaintiff's grievances discuss his attempted suicide on January 14, 2022 (*Id.*). The Court agrees with Defendants Bent and Knight. Having thoroughly reviewed all of Plaintiff's exhausted grievances, the Court finds that none of them identify and therefore, exhaust, Plaintiff's claim against Defendants Bent and Knight raised in Count 1.

The statutory purpose of requiring inmates to exhaust their administrative remedies is to "give the prison administration an opportunity to fix the problem-or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner." *Pozo*, 286 F.3d at 1024. A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and citation omitted). Conversely, grievances that do not provide notice of an inmate's actual claim are insufficient to exhaust remedies as to that claim. *See Ross v. Lamb*, No. 19-CV-577-DWD, 2021 WL 4820369, at *3 (S.D. Ill. Oct. 15, 2021) (A grievance that primarily discussed a disciplinary ticket was "insufficient to alert prison officials that

he was grieving the failure to protect him from a dangerous situation or the failure to get him adequate medical care in its aftermath.").

Here, the Court has reviewed Plaintiff's procedurally exhausted grievances and found that none of them identify Defendants Bent and Knight, whether by name or description (*see supra* Discussion § I – Plaintiff's Grievances). Likewise, none of Plaintiff's procedurally exhausted grievances discuss the specific events immediately preceding his suicide attempt on January 14, 2022. Thus, by failing to both identify Defendants Bent and Knight and to grieve the events related to his claim in Count 1, Plaintiff's grievances were insufficient to put the prison on notice that he was grieving Defendant Bent's and Knight's actions that occurred in the hours before his suicide attempt. *See Walton v. Scott*, No. 17-CV-664-SMY-RJD, 2018 WL 3242146, at *2 (S.D. Ill. July 3, 2018) (granting a motion for summary judgment where the plaintiff's grievance failed to name, identify, or describe the two defendants in question and also failed to mention the issues raised in his lawsuit).

Plaintiff has failed to exhaust his administrative remedies as to this claim and therefore, Defendant Bent and Knight's motion for summary judgment is **GRANTED** as to Count 1. Furthermore, because Defendants Bent and Knight have been granted summary judgment based upon the failure to exhaust on Count 1 and this is the only against Defendants Bent and Knight, they are hereby **DISMISSED without prejudice** and judgment will be entered in their favor at the conclusion of this case.

b.  _Count 2 – Eighth Amendment Claim Against Morris_

Defendant Morris contends that she is entitled to summary judgment on Count 2 because Plaintiff failed to exhaust his administrative remedies as to that claim (Doc. 84 at p. 10). Defendant Morris further avers that only one of Plaintiff's grievances mentions the issue of forced medication and it only did so to provide background information (_Id._). The Court is not persuaded by this argument.

As Defendant Morris concedes, Grievance No. 103-8-22 specifically grieves that "[i]nstead of getting me the help I need, Carri Morris recommended that I need force meds. I take my meds and still was self-harming." (Doc. 77-1 at pp. 8-9). Given this statement, which unequivocally identifies Defendant Morris and challenges her implementation of forced medication, the Court finds Grievance No. 103-8-22 exhausted Plaintiff's administrative remedies as to his forced medication claim raised against Defendant Morris in Count 2.

Additionally, the Court is not persuaded by Defendant Morris' argument that Plaintiff only mentioned the issue of forced medication to provide background information (Doc. 84 at p. 10). Plaintiff's grievance challenged the mental health treatment he was being provided by "Carri Morris and the rest of her staff" while housed in a crisis cell at Menard (Doc. 77-1 at p. 8). One aspect of that treatment was forcing Plaintiff to take medication that he believed to be ineffective. Thus, rather than constituting mere background information, his statement regarding ineffective, forced medication was at the very heart of his complaint.

For these reasons, Defendant Morris' motion for summary judgment as to Count 2 is DENIED.

      c. _Count 3 – Eighth Amendment Claim Against Buettner, Mabrey, Draper & Morris_

Defendant Mabrey has separately moved for summary judgment on Plaintiff's claim raised against her in Count 3 (Docs. 76, 77). According to Defendant Mabrey, none of Plaintiff's procedurally exhausted grievances identify her or challenge any mental health treatment attributable to her (Doc. 77 at pp. 11-12). For the reasons discussed below, the Court finds Plaintiff exhausted his administrative remedies as to this specific claim raised against Defendant Mabrey.

Defendant Mabrey appears to concede that several of Plaintiff's grievances challenge the lack of mental health treatment he was receiving (_Id._). The Court agrees with this assessment and finds Plaintiff's procedurally exhausted grievances provided sufficient notice of his claim that he was being denied appropriate mental health treatment before and after his suicide attempts in 2022 (_see, e.g._, Doc. 77-1 at pp. 25-26, 18-19, 14-15). Consequently, the only question is whether any of Plaintiff's grievances also provided sufficient information to identify Defendant Mabrey as their target.

As to this issue, Defendant Mabrey points out that none of Plaintiff's procedurally exhausted grievances mention her by name (Doc. 77 at p. 11; _see also_ Doc. 77-1). However, this omission is not fatal to Plaintiff's claim raised against Defendant Mabrey in Count 3 because Plaintiff's grievances repeatedly challenged the lack of treatment Plaintiff was receiving from "mental health staff" (_see, e.g._, Doc. 77-1 at p. 26). And significantly, Plaintiff's Complaint alleges, and Defendant Mabrey does not dispute, that she worked

as mental health staff at Menard and treated Plaintiff during the time period in question (Doc. 1 at pp. 3 & 16).

Thus, the Court finds that by challenging the treatment he was receiving from mental health staff, this was sufficient to notify the prison of Plaintiff's claim against Defendant Mabrey, a member of the mental health staff at Menard who treated Plaintiff. *See Maddox*, 655 F.3d at 722 ("He complained about an administrative decision—the cancellation of AHI services—and it belies reason to suggest that prison administrators at Lawrence were unaware of who was responsible for that decision."). Again, Plaintiff specifically challenged the mental health staff that was providing him with treatment at Menard. Even though he may not have specified (or known) Defendant Mabrey's name, this statement provided prison officials with ample notice that his claim was against the mental health staff who were treating him at that time, which of course included Defendant Mabrey. *See Willis v. Dart*, 21-CV-1295, 2024 WL 2882209, at *5 (N.D. Ill. June 7, 2024) ("In this case, the undisputed facts show that plaintiff's Grievance – by referencing the 'guard' who let a transferred inmate with mental health issue onto his tier – provided sufficient information to enable the CCDOC officials to determine that Cribbs was the 'guard' in question."); *Bakaturski v. Brookhart*, No. 21-cv-00014-GCS, 2022 WL 1093633, at *3–4 (S.D. Ill. Apr. 12, 2022) (holding an inmate properly exhausted claims because his grievances against "healthcare" and "head of medical" were sufficient for prison officials to identify the defendant); *German v. Stewart*, 3:22-CV-1352-SMY, 2024 WL 1093727, at *4 (S.D. Ill. Mar. 13, 2024) (finding grievances were sufficient to identify the defendants because a  "review of these records and the grievances conclusively

establishes that these defendants were the nurses and doctor who saw Plaintiff in the course of his attempts to secure treatment for his ear ailment."); *Bratcher v. Nicholson*, 19 C 8190, 2023 WL 2539032, at *4 (N.D. Ill. Mar. 16, 2023) (finding the plaintiff's grievances that complained of a lack of staff intervention were sufficient to identify and exhaust the plaintiff's claims against the correctional officers).

For these reasons, Defendant Mabrey's Motion for Summary Judgment based upon a failure to exhaust is DENIED as to Count 3 (Doc. 76).

### d. *Count 4 – Eighth Amendment Claim Against Royster & Hoffman*

Defendants Royster and Hoffman argue that they are entitled to summary judgment on Plaintiff's claim in Count 4 because none of Plaintiff's grievances identify them or Plaintiff's claim raised against them in Count 4 (Doc. 84 at pp. 10-11). The Court is not persuaded by Defendants' argument.

Plaintiff's claim in Count 4 was that Defendants Royster and Hoffman failed to protect him from self-harm on March 30, 2022, and then unjustifiably pepper sprayed him and issued him a disciplinary ticket (Doc. 14 at pp 2-3). Admittedly, none of Plaintiff's procedurally exhausted grievances directly name Defendants Royster or Hoffman. However, "[g]rievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit." *Glick*, 385 Fed. Appx. at 582. And here, the Court finds Grievance No. 203-4-22 provided prison officials with sufficient notice of Plaintiff's claim and an opportunity to address those claims.

For one, Grievance No. 203-4-22 grieved the mental health treatment Plaintiff was receiving and noted that he "no longer report[s] [his self-harm] because they are writing tickets so I just bleed out in the sink." (Doc. 77-1 at p. 22). While the Court can certainly envision ways in which Plaintiff could have been more descriptive in his identification of Defendants than merely using the word "they," it is noteworthy that Plaintiff's grievance was not rejected at the facility level for its lack of descriptiveness. *See Glick*, 385 Fed. Appx. at 582 ("With that understanding, we must infer that Glick gave administrators a fair opportunity to address his concerns about his mental-health treatment and his exposure to second-hand smoke since, without even a passing reference to § 504.810(b) or the absence of names, reviewers at Menard and then the ARB evaluated and decided both grievances on the merits.").

Even more importantly, Plaintiff's grievance challenged the authors of the disciplinary tickets he received (Doc. 77-1 at p. 22). In this regard, all prison officials had to do to identify Defendants was review who had recently issued Plaintiff a disciplinary ticket for self-harm related acts. *See Glick*, 385 Fed. Appx. at 582 (Observing that "the identification requirement in the first sentence is softened by the second sentence, which clarifies that prisoners need identify names only to the extent practicable."). One such ticket, which Plaintiff attached to his Complaint, was authored by Defendant Hoffman on March 30, 2022 (Doc. 1 at p. 20). That disciplinary ticket specifically listed Defendant Royster as a witness and stated that Defendant Royster administered a burst of pepper spray (*Id.*). Therefore, by grieving the disciplinary ticket that Plaintiff received, this provided prison officials with sufficient information to identify Defendants Royster and

Hoffman. *See Willis*, 2024 WL 2882209 at *5 (finding a grievance sufficiently identified the defendant by referencing the "guard" who had allowed a transferred inmate onto the plaintiff's tier); *Randall v. Schoenbeck*, 3:22-CV-2146-MAB, 2024 WL 1174459, at *5 (S.D. Ill. Mar. 19, 2024) ("It is clear from the context of Plaintiff's grievance and his numerous references to the ticket that he was challenging the validity of the ticket and the report of the officer who issued it."); *Gibson v. Wexford Health Sources, Inc.*, 3:22-CV-50281, 2023 WL 9316119, at *4 (N.D. Ill. Oct. 20, 2023) ("Although Plaintiff did not name Dr. Zahtz, prison officials certainly knew that Dr. Zahtz was involved in Plaintiff's medical care following his fall. In responding to Plaintiff's grievance, prison officials specifically identified the medical treatment Plaintiff received to date, including Plaintiff's January 31, 2019 medical visit with Dr. Zahtz.").

As such, the Court rejects Defendants' claim that Plaintiff did not exhaust his administrative remedies as to his claim in Count 4. Therefore, Defendant Royster and Hoffman's motion for summary judgment on Count 4 is DENIED.

     e.   <u>Count 5 – Eighth Amendment Claim Against Maldonado & Akins</u>

Defendants Maldonado and Akins claim they are entitled to summary judgment on Count 5 because none of Plaintiff's exhausted grievances identify them or his claim against them (Doc. 84 at p. 11). Specifically, Defendants Maldonado and Akins argue that even though Grievance No. 286-6-22 discusses the relevant incident, it did not identify them by name or description (*Id.*)

As discussed above, Grievance No. 286-6-22 was procedurally exhausted (*see* Doc. 77-1 at pp. 11-15). Additionally, Defendants Maldonado and Akins concede that

Grievance No. 286-6-22 discusses the incident that occurred on June 11, 2022 (Doc. 84 at p. 11). As such, the Court's analysis is solely focused upon whether Plaintiff's grievance identified the officers whose actions he was grieving.

Crucially, Grievance No. 286-6-22 discusses the June 11 incident in a manner that would have put prison officials on notice of Plaintiff's claim against Defendant Akins. For instance, that grievance stated, "[s]o I cut with paper clip on my arm and hand and blood went under my door. I was mace[d] and pull out my cell that same morning to see medical and I was put back in my cell. The Officers that shook my cell down, don't know they name but it's on the shake down slip and my ticket, they took the paper clip." (Doc. 77-1 at p. 15). Thus, by directing prison officials to the disciplinary ticket and shake down slip, Plaintiff's grievance attempted to identify the officers involved by providing details the prison could use to identify them (*see Id.*).

In fact, Plaintiff attached that disciplinary ticket to his Complaint and it was authored by Defendant Akins (*see* Doc. 1 at p. 22). In other words, contrary to Defendant Akins' assertion that Plaintiff failed to "describe any security staff to the extent that they could be identified" (Doc. 84 at p. 11), the Court finds that Plaintiff did adequately describe Defendant Akins in such a manner that it provided an easy means for prison officials to identify him. *See Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024) ("Indeed, we have found exhaustion as to defendants not named in a grievance when, from the content of the grievance and the nature of the complained of conduct the prison was clearly on notice that those unnamed defendants were involved."); *Hall v. Maue*, 12-CV-0204-MJR-SCW, 2014 WL 722399, at *3 (S.D. Ill. Feb. 25, 2014) ("It is Defendants' burden to show

Plaintiff failed to exhaust his administrative remedies, and they have not carried that burden here. … By submitting his disciplinary ticket along with his grievance form, Plaintiff gave the IDOC ample information to know which correctional officers may have assaulted him. That is all the PLRA requires."). For this reason, Defendant Akins' motion for summary judgment on Count 5 is DENIED.

A closer question is presented as to whether Grievance No. 286-6-22 sufficiently identified Defendant Maldonado. Admittedly, Defendant Maldonado neither authored the disciplinary ticket at issue nor was mentioned in that ticket (Doc. 1 at p. 22). However, in addition to referencing the disciplinary ticket, Plaintiff's grievance also stated that the names of the officers who shook down his cell could be found in the related shake down slip (Doc. 77-1 at p. 15). This naturally leads to the question of whether Defendant Maldonado either authored the shake down slip or was listed in that slip as one of the officers involved in searching Plaintiff's cell.

Neither Defendant Maldonado nor Plaintiff[3] attached the relevant shake down slip to their exhaustion-based filings.[4] Yet, Defendants bore the burden of proof on the

---

[3] The Court is not certain whether this shake down slip would be in Plaintiff's position and/or was provided to him during the limited discovery that occurred during the exhaustion phase of this proceeding. It is possible that Plaintiff reviewed this slip at some point and then relied upon its contents when deciding to substitute Defendant Maldonado for John Doe 2 (*see* Docs. 63, 64). However, given the limited discovery that has occurred to date and the burden of proof being upon Defendants, the Court does not believe it would be fair to place the responsibility for providing this shake down slip to the Court on Plaintiff's shoulders.

[4] The parties' failure to provide the shake down slip, which is central to Plaintiff's potential identification of Defendant Maldonado, creates a novel issue. Typically, when there is a disputed issue of fact based upon conflicting evidence, the Seventh Circuit has instructed district courts to conduct an evidentiary hearing (known as a "*Pavey* hearing") to resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). On the other hand, an evidentiary hearing is not necessary when no material factual disputes are present. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed

affirmative defense of exhaustion. *See Maddox*, 655 F.3d at 720. And again, Defendants undoubtedly have access to that shake down slip and other records that would allow them to determine which officers were involved in searching Plaintiff's cell on June 11, 2022. Therefore, because Plaintiff's grievance stated he did not know the names of the officers involved and then specifically referenced the shake down slip as a way of identifying them, Defendants should have provided the Court with that shake down slip (or some other evidence) to meet their burden of demonstrating Defendant Maldonado was not one of the officers that could have been identified as having searched Plaintiff's cell. By failing to do so, Defendants have not met their burden of proof by demonstrating that Plaintiff never identified his claim against Defendant Maldonado.[5] *See Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("[W]e must bear in mind that failure to exhaust is an affirmative defense, and as such the burden of proof is on the defendants to establish

---

facts regarding exhaustion, only a legal question"). Here, because neither party has argued or provided evidence to establish which officers were involved in the shake down of Plaintiff's cell, the Court has no way of determining whether there even is a contested issue of fact between the parties that would necessitate a *Pavey* hearing. And while the Court could just conduct a *Pavey* hearing to get to the bottom of this issue, doing so is not procedurally fair to Plaintiff because it is Defendants who bore the burden of establishing all the essential elements of their affirmative defense of exhaustion. *See Jones v. Lamb*, 124 F.4th 463, 467 (7th Cir. 2024). In other words, holding a *Pavey* hearing on this point may impermissibly give Defendants a second chance to establish all the essential elements of their affirmative defense after they failed to do so the first time. In addition, conducting such a hearing without even knowing whether a material factual dispute exists could result in wasting the time and resources of the parties and the Court.

[5] As the Seventh Circuit has recently reiterated, "[t]o succeed on a motion for summary judgment based on an affirmative defense, the defendant 'must lay out the elements of the [defense], cite the facts which [the defendant] believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the [plaintiff] on the [defense].'" *Jones*, 124 F.4th at 467 (quoting *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015)). Therefore, in a situation such as this where a defendant claims a grievance did not identify him, Defendant Maldonado needed to demonstrate that the record was so one sided that it could not be found that Plaintiff identified him in his grievances. Defendant Maldonado could have easily accomplished this task by providing the relevant shake down slip, thus demonstrating his lack of involvement in Plaintiff's cell search on June 11, 2022. Because he did not do so, the Court is unable to conclude that he was not identified by Plaintiff's statements in Grievance No. 286-6-22 that targeted the officers responsible for his cell search.

that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable."); *Schaefer v. Bezy*, 336 Fed. Appx. 558, 560 (7th Cir. 2009) ("Because the prison employees bear the burden on exhaustion, they must do more than point to a lack of evidence in the record; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable factfinder could find that Schaefer was prevented from exhausting his administrative remedies."); *Glick*, 385 Fed. Appx. at 583 (rejecting a motion for summary judgement based upon a failure to exhaust because the "defendants offered no evidence to support their contention that Glick was required to do something more after his emergency grievance had been rejected by the warden and by the ARB.").

For this reason, the Court finds Defendant Maldonado has failed to demonstrate that Plaintiff did not exhaust his administrative remedies as to his claim raised against him in Count 5. Accordingly, Defendant Maldonado and Akins' motion for summary judgment on Count 5 is DENIED.

### f.  Count 6 – Eighth Amendment Claim Against Akins & Mabrey

Defendant Mabrey and Defendant Akins have each moved for summary judgment on Count 6 based upon Plaintiff's failure to exhaust his administrative remedies (Doc. 77 at p. 11; Doc. 84 at pp. 12-13). Pertinently, both Defendants argue that Plaintiff failed to identify his claim against them (Doc. 77 at p. 11; Doc. 84 at pp. 12-13).

Notably, the only procedurally exhausted grievance that was filed after July 15, 2022 (i.e., the date of the fire), is Grievance No. 103-8-22 (Doc. 77-1 at pp. 8-9). In that grievance, Plaintiff stated that at approximately 8:50 a.m. on July 15, 2022, he set his

mattress on fire in an attempt to harm himself (*Id.*). Plaintiff later wrote, "I should not have been able to set [no] fire. Somebody could have not been doing they job." (*Id.*).

Notably, nothing in Grievance No. 103-8-22 identifies Defendant Akins as its target. *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) ("The grievance has a fatal defect, but it lies elsewhere; it lies in the absence of anything in it to indicate that Davis was the target."); *Cunningham v. Isaacs*, No. 3:21-CV-247-MAB, 2022 WL 3026854, at *3 (S.D. Ill. Aug. 1, 2022) ("In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing."). This lies in stark contrast to the relevant grievance in Count 5 that unequivocally directed prison authorities to the author of Plaintiff's disciplinary ticket (which was Defendant Akins) because nothing in Grievance No. 103-8-22 names Defendant Akins or provides an alternative way of identifying him. Furthermore, Grievance No. 103-8-22 does not complain (or even mention) that Plaintiff was sprayed with a fire extinguisher. Likewise, it altogether fails to discuss any discipline he received for starting the fire in his cell. For these reasons, Defendant Akins' motion for summary judgment on Count 6 is GRANTED.

The Court reaches the same conclusion for Defendant Mabrey, but for different reasons. Admittedly, for the reasons discussed in Count 3, Grievance No. 103-8-22 adequately identifies Defendant Mabrey by stating, "I keep telling Carri Morris and ***the rest of her staff*** that it's not safe for me in these crisis cells." (Doc. 77-1 at pp. 8-9) (emphasis added). Therefore, in light of Defendant Mabrey's position as medical staff working under Defendant Morris, this provided ample opportunity for prison officials to

identify Defendant Mabrey as one of the targets of Plaintiff's grievance. Nevertheless, identifying Defendant Mabrey as one of the individuals responsible for Plaintiff receiving inadequate mental health treatment does not match the fire-related claim Plaintiff has raised against her in Count 6. In other words, such a generalized complaint about Plaintiff's mental health treatment does not identify the more specific claim found in Count 6 regarding Plaintiff obtaining matches to start a fire in his cell, and the response he received of being sprayed with a fire extinguisher and issued a disciplinary ticket. *See Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021) ("Finding a grievance did not sufficiently identify the issue because "[c]ontending that Officer Rottar failed to come to his aid during the attack is not the same as alleging that the jail employees predicted but ignored the risk."). Without this connection, Grievance No. 103-8-22 fails to identify Plaintiff's fire-related claims against Defendant Mabrey. *See Jackson*, 105 F.4th at 959 ("Moreover, the 'specific issue' raised in that grievance was not that there were incapacitating agents in the cell but that Lt. Esser failed to turn Jackson's water on after being notified that it was off. This grievance suggested that the 'nature of the wrong for which redress is sought' was the lack of water, not the presence of incapacitating agents in the cell."). Consequently, this grievance does not exhaust Plaintiff's administrative remedies as to his claim raised against Defendant Mabrey in Count 6.

For the reasons discussed above, Defendant Mabrey's (Doc. 76) and Defendant Akins' (Doc. 83) Motions for Summary Judgment as to Count 6 are GRANTED.

g.  *Count 7 – Eighth Amendment Claim Against Brooks, Choate & Rowland*

Finally, Defendants Brooks, Choate, and Rowland argue they are entitled to summary judgment on Count 7 based upon Plaintiff's failure to exhaust his administrative remedies (Doc. 84 at p. 13). Defendants again argue that Plaintiff's grievances fail to identify his claims against them (*Id.*).

As an initial matter, although Plaintiff's claims against Defendants Brooks, Choate, and Rowland were grouped together in Count 7 into one Eighth Amendment claim for encouraging Plaintiff to inflict self-harm (*see* Doc. 14 at p. 9), the underlying acts between these Defendants are distinct. That is, Plaintiff's claim against Defendants Brooks and Choate is that they encouraged him to harm himself and intentionally left dangerous items in his cell when conducting searches of his cell (*see* Doc. 1 at p. 16). Meanwhile, Plaintiff's claim against Defendant Rowland is that he was insensitive to Plaintiff's mental health concerns and removed him from crisis watch for improper reasons (*Id.* at p. 17).

Regarding Defendants Brooks and Choate, the Court denies their claim for summary judgment because Plaintiff's grievances adequately identify Plaintiff's claim against them. Specifically, in Grievance No. 286-6-22, Plaintiff complained that he kept finding materials such as a spork, copper wire, and paper clips in his cell (Doc. 77-1 at pp. 14-15). Plaintiff further wrote that officers searched his cell on June 11, 2022, and took a paper clip, but he then found another paper clip in his cell which he used to harm himself one day later (*Id.*). Likewise, in Grievance No. 1-4-22, Plaintiff wrote that "every time I go out my cell, the C/O keep searching my cell, leaving staples, spoons, paper clips, etc." (*Id.* at pp. 25-26). Additionally, in Grievance No. 167-5-22, Plaintiff also grieved

that he doesn't trust the staff and since being placed in his cell, he continued to find things
he could self-harm with (*Id.* at pp. 18-19). Thus, Plaintiff's procedurally exhausted
grievances alerted the prison on multiple occasions to the nature of his concern that
Defendants were encouraging him to self-harm by leaving objects in his cell.

Furthermore, the Court is not persuaded by Defendants Brooks and Choate's
argument that none of Plaintiff's grievances identify them. While it is true Plaintiff did
not directly mention either Defendant Brooks or Choate in his grievances, as previously
discussed in relation to Defendant Maldonado, Grievance No. 286-6-22 attempted to
identify the alleged wrongdoers by noting that they were the ones involved in his cell
shake down (*Id.* at p. 15). Therefore, while Grievance No. 286-6-22 did not state the names
of Defendants Brooks and Choate, prison officials could have looked to the shake down
slip and/or tickets referenced in Plaintiff's grievance to identify the alleged wrongdoers.
*See Jackson*, 105 F.4th at 960 ("In other words, a grievance must contain enough
information about who caused the grieved of problem so that a prison can properly
'investigate and resolve grievances.'"). And, as discussed above in Count 5, if the relevant
tickets and shake down slips did not identify Defendants Brooks and Choate, Defendants
should have provided those documents to demonstrate that Plaintiff's attempts to
identify them in his grievances were inadequate. Accordingly, because Defendants failed
to provide this evidence, the Court finds Defendants have not met their burden by
demonstrating that Plaintiff's grievances failed to identify them. For these reasons,
Defendants Brooks and Choate's motion for summary judgment as to Count 7 is
DENIED.

Conversely, having thoroughly reviewed the record and Plaintiff's procedurally exhausted grievances, the Court finds that none of Plaintiff's grievances adequately identify Plaintiff's claim against Defendant Rowland – either directly or by his actions. To be clear, Grievance No. 103-8-22 does name Defendant Rowland (*Id.* at p. 9).[6] However, that grievance does not identify Plaintiff's claim against him (*Id.* at pp. 8-9). *See Bowers*, 1 F.4th at 518. Instead, Plaintiff wrote in Grievance No. 103-8-22 that Defendant Rowland responded to one of his past grievances by stating that Plaintiff's cell was searched at least once a week (*Id.*). As such, this grievance did not provide any notice to prison officials of the nature of Plaintiff's claim related to Defendant Rowland that he improperly moved him from crisis watch and was insensitive to his mental health concerns. Furthermore, no other procedurally exhausted grievances identify or allude to Defendant Rowland or Plaintiff's claim against him.

For these reasons, Defendant Rowland is granted summary judgment on Plaintiff's specific claim raised against him in Count 7 due to Plaintiff's failure to exhaust his administrative remedies. In addition, because Defendant Rowland has been granted summary judgment based upon Plaintiff's failure to exhaust his administrative remedies on the only claim remaining against him, Defendant Rowland is hereby **DISMISSED without prejudice** and judgment will be entered in his favor at the conclusion of this case.

---

[6] In Grievance No. 103-8-22, Plaintiff wrote "Maj. Roland," as opposed to "Rowland." (Doc. 77-1 at p. 9). Obviously, however, this grievance adequately identified Defendant Rowland even with the minor spelling error it contained. As such, the Court rejects Defendant Rowland's blanket assertion that none of Plaintiff's grievances identified him by name or description (*see* Doc. 84 at p. 13).

Conversely, Defendants Brooks and Choate's motion for summary judgment as to Plaintiff's claim against them in Count 7 is DENIED. Therefore, Plaintiff's claim in Count 7 will proceed against Defendants Brooks and Choate.

### III.   *Plaintiff's Motion for Status (Doc. 91)*

Plaintiff has also filed a Motion for Status, which inquires into the status of Defendants' exhaustion-based Motions for Summary Judgment so he can better prepare for the next step in litigation while he is being transferred to another facility (Doc. 91). The Court **GRANTS** Plaintiff's request (Doc. 91) and provides him with the following status update.

In light of the Court's determinations made in this Order, Plaintiff's Complaint will proceed as follows:

- **Count 2** against Defendant Morris;

- **Count 3** against Defendants Buettner, Mabrey, Draper, and Morris;

- **Count 4** against Defendants Royster and Hoffman;

- **Count 5** against Defendants Maldonado and Akins;

- **Count 7** against Defendants Brooks and Choate.

(*see also* Doc. 14 at pp. 6-7). Meanwhile, Counts 1 and 6 are **DISMISSED** in full and Count 7 is **DISMISSED** specifically as to Defendant Rowland. Consequently, Defendants Bent, Knight, and Rowland are **DISMISSED without prejudice** and judgment will be entered in their favor at the conclusion of this case.

Finally, the Court notes that this action is now moving beyond the exhaustion of administrative remedies phase. Accordingly, the stay on merits-based discovery is

**LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

## CONCLUSION

For the reasons discussed above, Defendant Mabrey's exhaustion-based Motion for Summary Judgment is GRANTED in part and DENIED in part (Docs. 76, 77); and Defendants Bent, Akins, Brooks, Choate, Hoffman, Knight, Maldonado, Morris, Rowland, and Royster's exhaustion-based Motion for Summary Judgment is GRANTED in part and DENIED in part (Docs. 83, 84). Judgment will be entered in favor of Defendants Bent, Knight, and Rowland at the conclusion of this case.

Additionally, Plaintiff's Motion for Status is GRANTED (Doc. 91).

**IT IS SO ORDERED.**

**DATED:** March 24, 2025

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**